1  Stephen D. Weisskopf, Esq. (State Bar No. 213596)
   sweisskopf@levatolaw.com
2  Christopher E. Stiner, Esq. (State Bar No. 276033)
   cstiner@levatolaw.com
3  LEVATOLAW, LLP
   2029 Century Park East, Suite 2910
4  Los Angeles, California 90067
   Telephone: (310) 734-2026
5  Facsimile: (310) 421-4180

6  Attorneys for Plaintiff
   TORTILLA FACTORY, LLC
7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 TORTILLA FACTORY, LLC,                Case No. 2:18-cv-02984-MLR
                                         [Assigned to Hon. Manuel L. Real]
12            Plaintiff,
                                         **TORTILLA FACTORY'S**
13       vs.                             **OPPOSITION TO DEFENDANT**
                                         **ROWDY MERMAID**
14                                       **KOMBUCHA, LLC'S MOTION**
15 ROWDY MERMAID KOMBUCHA,               **TO DISMISS COMPLAINT**
   LLC, et al.,
16                                       Hearing Date: August 20, 2018
              Defendants.                Time: 10:00 a.m.
17

18

19                                       Action Filed: April 9, 2018
20                                       Trial Date:  No Date Set

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................. 1

II.   BACKGROUND AND PROCEDURAL HISTORY ................................. 3

III.   LEGAL STANDARD .......................................................... 4

IV.   ARGUMENT .................................................................. 5

   A.   The Complaint Sufficiently Alleges Causation and Harm ................ 5
      1.   There are not Two Kombucha Markets ................................ 5
      2.   Tortilla Factory alleges Proximate Cause and Injury ............. 6
   B.   Plaintiff's Claims Satisfy Rule 9(b) ................................ 10
      1.   The Complaint Sufficiently Alleges That Rowdy Mermaid's Sugar Content Is Understated ................................ 11
      2.   The Complaint Sufficiently Alleges Testing That Supports Its Alcohol Allegations ................................ 12
   C.   The Doctrine of Primary Jurisdiction Does Not Apply and Therefore a Stay is Unnecessary ................................ 14

V.   CONCLUSION ................................................................. 17

1

# TABLE OF AUTHORITY

2

<u>**CASES**</u>                                                                                                       **Page**

3
*Arista Records LLC v. Doe 3* ............................................................... 11
4
   604 F3d 110 (2nd Cir. 2010)

5
*Blue Star Press, LLC v. Blasko*, 2018 WL 1904835 ..................................... 9, 10
   (W.D. Tex. filed Mar. 6, 2018)

6
*Bobbleheads.com, LLC v. Wright Bros., Inc.* ..............................................9, 10
7
   259 F. Supp. 3d 1087 (S.D. Cal. 2017)

8
*Burke v. Weight Watchers Int'l, Inc.* ......................................................13
   983 F. Supp. 2d 478 (D.N.J. 2013)

9
*Brickstructures, Inc. v. Coaster Dynamix, Inc.* ..........................................14
10
   2017 WL 4310671 (N.D. Ill. Sept. 28, 2017),

11
*Center For Biological Diversity v. Veneman* ................................................5
   394 F.3d 1108, 1109-1114 (9th Cir. 2005)

12
*Cervantes v. City of San Diego* ............................................................4
13
   5 F.3d 1273, 1274 (9th Cir. 1993)

*Clark v. Time Warner Cable* ................................................................14
14
   523 F.3d 1110 (9th Cir.2008)

15
*Conley v. Gibson* ..........................................................................4
16
   355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)

*Cruz v. Anheuser-Busch, LLC* ..............................................................15
17
   2015 WL 3561536 (C.D. Cal. June 3, 2015)

18
*English v. General Elec. Co.*
19
   496 U.S. 72 (1990) ......................................................................13

*Epstein v. Wash. Energy Co.* ...............................................................4
20
   83 F.3d 1136, 1140 (9th Cir. 1996)

21
*Harold H. Huggins Realty, Inc. v. FNC, Inc.* ...............................................7
22
   634 F.3d 787, 799 fn. 5 (5th Cir. 2011)

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.* .......7
23
   215 F. Supp. 3d 51, 58 (D.D.C. 2016)

24
*In re Superior Air Parts, Inc.* ...........................................................11
25
   486 BR 728, 740 (ND TX 2012)

*Jacobo v. Ross Stores, Inc.* ..............................................................12
26
   2016 U.S. Dist. LEXIS 86958 (C.D. Cal. Feb. 23, 2016)

27
*Johnson v. Knowles* .........................................................................4
28
   113 F.3d 1114, 1117 (9th Cir. 1997)

ii

*Kwan v. SanMedica Int'l* ....................................................................... 13
   854 F.3d 1088 (9th Cir. 2017)

*Lee v. City of Los Angeles* ...................................................................... 4
   250 F.3d 668, 688 (9th Cir. 2001)

*Lexmark Int'l v. Static Control Components, Inc.* ................................... 6
   134 S.Ct. 1377 (2014)

*Lockwood v. Conagra Foods, Inc.* .......................................................... 16
   597 F. Supp. 2d 1028 (N.D. Cal. 2009).

*MGIC Indem. Corp. v. Weisman* ............................................................. 5
   803 F.2d 500 (9th Cir. 1986)

*Moore v. Kayport Package Exp., Inc.*
   885 F.2d 531 (9th Cir. 1989) ............................................................... 12

*Nutrition Distribution LLC v. PEP Research, LLC* ............................. 7, 8
   2017 WL 3972509 (S.D. Cal. Sept. 7, 2017)

*Neubronner v. Milken* ............................................................................ 12
   6 F.3d 666, 672 (9th Cir. 1993)

*New.Net, Inc. v. Lavasoft* ........................................................................ 9
   356 F. Supp. 2d 1090 (C.D. Cal. 2004)

*Pamlab LLC v. Seton Pharm., LLC* ...................................................... 13
   2010 U.S. Dist. LEXIS 128819 (S.D.N.Y. Dec. 6, 2010)

*POM Wonderful LLC v. Coca-Cola Co.* ................................................. 8
   134 S. Ct. 2228 (2014)

*Procter & Gamble Co. v. Chesebrough-Pond's Inc.* .............................. 13
   588 F. Supp. 1082, 1085 (S.D.N.Y.), *aff'd*, 747 F.2d 114 (2d Cir. 1984)

*Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.* .................. 9, 10
   2012 WL 1931519 (E.D. Mich. May 29, 2012)

*Stahl Law Firm v. Judicate W.* ................................................................ 9
   2013 WL 4873065 (N.D. Cal. Sept. 12, 2013)

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.* ...................... 16
   933 F. Supp. 918 (C.D. Cal. 1996).

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.* .......................... 5
   368 F.3d 1053, 1061 (9th Cir. 2004)

*Thompson v. Paul* .................................................................................. 10
   657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009)

*Tyler v. Cisneros* ..................................................................................... 4
   136 F.3d 603, 607 (9th Cir. 1998)

iii

*Vess v. Ciba-Geigy Corp. USA* ............................................................................... 11
  317 F.3d 1097 (9th Cir. 2003)

**RULES**
Fed.R.Civ.P. 9(b) ........................................................................................... 10

Fed.R.Civ.P. 12(b)(6)..................................................................................... 4

iv

## I.   INTRODUCTION

Tortilla Factory, LLC ("Tortilla Factory") submits its opposition to the motion to dismiss filed by Rowdy Mermaid Kombucha, LLC ("Rowdy Mermaid") on the grounds that Rowdy Mermaid is making spurious arguments, misstating the allegations in the Complaint, assuming as true statements of facts that are unsupported by any allegation in the Complaint, and attempting to hold Tortilla Factory to a standard of proof inapplicable at the pleading stage.

Tortilla Factory and Rowdy Mermaid both manufacture and sell kombucha, a popular fermented tea beverage.  Tortilla Factory's kombucha products contain more than 0.5% percent alcohol and therefore are marketed and sold in compliance with state and federal laws applicable to alcoholic beverages.  Recently, Tortilla Factory tested the kombucha manufactured by Rowdy Mermaid, using the industry leading testing method, Headspace Gas Chromatography with Mass Spectrometry. This testing revealed that Rowdy Mermaid's kombucha products contained between 1.0% and 1.2% alcohol, *more than twice the legal limit*, yet Rowdy Mermaid does not comply with any of the federal or state regulations for alcoholic products and describes its kombucha as containing "trace" amounts of alcohol "[a]t 0.5 percent or below." Rowdy Mermaid's nutrition label also appears to misrepresent the amount of sugar in the product.  This has allowed Rowdy Mermaid to gain a competitive advantage over Tortilla Factory and caused Tortilla Factory to lose sales to Rowdy Mermaid.  Consequently, Tortilla Factory brought this action against Rowdy Mermaid and its Distributors[1] for violations of the Lanham Act and Business & Professions Code Section 17200 and 17500.

Rowdy Mermaid's motion to dismiss presents baseless and confusing arguments, none of which warrant the dismissal of Tortilla Factory's claims.  ***First***,

---

[1] References to the "Distributors" herein refer to United Natural Foods, Inc. and United Natural Foods West, Inc.

Rowdy Mermaid's argument that the Complaint fails to allege a proximately caused injury is premised almost entirely on the unsupported assertion that there are two different kombucha markets (one for alcoholic kombucha and one for non-alcoholic kombucha) and Tortilla Factory and Rowdy Mermaid are therefore not competitors. To support this assertion, Rowdy Mermaid misrepresents the allegations in the Complaint wherein it states that Tortilla Factory essentially admits there are two different markets.  As demonstrated below, Tortilla Factory has pled that Rowdy Mermaid is a competitor and that both sell to the same consumers.  Rowdy Mermaid seeks to argue outside the four corners of the complaint that the kombucha products are sold at different locations to different consumers, an allegation unsupported by any part of the Complaint.  Such an assumption is simply improper.

**Second**, Rowdy Mermaid argues that Tortilla Factory must show test results proving it underestimates its kombucha products' sugar content.  It is sufficient at the pleading stage to allege that Tortilla Factory's knowledge of the kombucha brewing process provides a basis to assert that Rowdy Mermaid's sugar disclosures are false.

**Third**, Rowdy Mermaid alternately argues that because the Alcohol and Tobacco Tax and Trade Bureau ("TTB") frequently asked questions fails to identify any specific test method for testing alcohol, the Court's authority is essentially preempted unless and until Tortilla Factory exhausts all possible testing methods for alcohol.  This argument is unsupported by the case law, and unpersuasive given that the Kombucha Brewers International ("KBI") is lobbying for the TTB to adopt the very test method used by Tortilla Factory, Headspace Gas Chromatography with Mass Spectrometry as described in the Complaint.

**Fourth**, Rowdy Mermaid's argument that the Court should stay the proceeding pending a TTB determination of an appropriate testing method is similarly ill conceived.  A number of agencies and authorities test for alcohol levels,

1  this is not something uniquely within the expertise of the TTB, and the TTB has

2  made no indication it wishes to set a specific testing method.

3       Accordingly, Tortilla Factory asks that Rowdy Mermaid's motion to dismiss

4  be denied in its entirety.

5  **II.   BACKGROUND AND PROCEDURAL HISTORY**

6       Kombucha is a beverage made by fermenting sweetened tea using a mixture

7  of bacteria and yeast. [Dkt. No. 1, Complaint ("Complaint"), ¶ 12]. Kombucha,

8  when brewed in the traditional process, contains ingredients viewed as beneficial by

9  its health-conscious consumers. [*Id.*] However, traditionally brewed kombucha can

10 contain more than 0.5 percent alcohol. [*Id.*, ¶ 13] Beverages that contain more than

11 0.5 percent are subject to state and federal regulations. [*Id.*, ¶¶ 13-15, 55]

12      In 2010, Tortilla Factory entered the market selling traditionally brewed

13 kombucha with more than 0.5 percent. [*Id.*, ¶¶ 16-17] Tortilla Factory elected to

14 comply with applicable statutes and regulations governing the manufacture,

15 distribution, and sale of its kombucha as an alcoholic beverage. [*Id.*, ¶ 18]

16      In 2017, Tortilla Factory first learned that Rowdy Mermaid's product line has

17 an alcohol content above the 0.5 percent threshold that required it to comply with

18 state and federal laws. [*Id.*, ¶¶ 26, 55] Subsequent testing revealed samples with an

19 alcohol content of between 1.0 and 1.2 percent, twice the legal limit. [*Id.*, ¶ 26]

20 Rowdy Mermaid has continued selling, marketing and distributing their kombucha

21 products without disclosing to consumers this alcohol content, along with

22 committing other violations of state and federal law. [*Id.*, ¶¶ 54-55]

23      Tortilla Factory is a direct competitor of Rowdy Mermaid with respect to

24 brewing kombucha for sale in retail and wholesale settings. [*Id.*, ¶ 30] The parties

25 are vying for the same dollars from the same consumers, and did so at all times

26 relevant to this action, except that Tortilla Factory did not seek to sell alcohol to

27 minors. [*Id.*]

28

1    Consequently, on April 9, 2018, Tortilla Factory filed its complaint against

2    Rowdy Mermaid and the Distributors.

3    **III.    LEGAL STANDARD**

4    A complaint should not be dismissed for failure to state a claim upon which

5    relief may be granted under Federal Rule of Civil Procedure 12(b)(6) unless it

6    "appears beyond doubt that the plaintiff can prove no set of facts in support of his

7    claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46

8    (1957); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997). When the legal

9    sufficiency of a complaint's allegations is tested with a motion under Rule 12(b)(6),

10   "[r]eview is limited to the complaint." *Cervantes v. City of San Diego*, 5 F.3d 1273,

11   1274 (9th Cir. 1993). All factual allegations set forth in the complaint are taken as

12   true and construed in the light most favorable to the plaintiff. *Epstein v. Wash.*

13   *Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). The Court must give the plaintiff

14   the benefit of every inference that reasonably may be drawn from well-pleaded

15   facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998).

16   "Denial of leave to amend 'is improper unless it is clear . . . that the complaint

17   could not be saved by any amendment.'" *Thinket Ink Info. Res., Inc. v. Sun*

18   *Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004); *Center For Biological*

19   *Diversity v. Veneman*, 394 F.3d 1108, 1109-1114 (9th Cir. 2005).

20   Generally, the Court "may not consider any material beyond the pleadings in

21   ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th

22   Cir. 2001). Rule 12(b)(6) expressly provides that "when matters outside the pleading

23   are presented to and not excluded by the court, the motion shall be treated as one for

24   summary judgment and disposed of as provided in Rule 56, and all parties shall be

25   given reasonable opportunity to present all material made pertinent to such a motion

26   by Rule 56." Fed.R.Civ.P. 12(b)(6).

27

28

1       There are two exceptions to the requirement that consideration of extrinsic

2   evidence converts a Rule 12(b)(6) motion to a motion for summary judgment. *Lee*,

3   250 F.3d at 688.  First, the Court "may consider material which is properly

4   submitted as part of the complaint on a motion to dismiss without converting the

5   motion to dismiss into a motion for summary judgment." *Id*. If the documents are

6   not physically attached to the complaint, they may be considered if the documents'

7   authenticity is not contested and the plaintiff's complaint necessarily relies on them.

8   *Id*. at 689.  Second, pursuant to Federal Rule of Evidence 201, the Court may take

9   judicial notice of "matters of public record" without converting a motion to dismiss

10  into a motion for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d

11  500, 504 (9th Cir. 1986).  But the Court may not take judicial notice of a fact that is

12  "subject to reasonable dispute." Fed.R.Evid. 201(b).

13  **IV.    ARGUMENT**

14      **A.    The Complaint Sufficiently Alleges Causation and Harm**

15          **1.  There are not Two Kombucha Markets**

16      Initially, Tortilla Factory must address the contention that Tortilla Factory and

17  Rowdy Mermaid compete in separate markets.  The Complaint clearly states that

18  Rowdy Mermaid and Tortilla Factory compete for the same customers in the same

19  market.  There is a segment of the market that needs to drink kombucha without any

20  alcohol: pregnant women, children, people with late stage liver disease, people

21  taking certain medications (e.g. benzodiazepine), or people with other alcohol

22  sensitivity.  As an aside the fact that Rowdy Mermaid is unconcerned with the

23  health risks that alcohol presents to these customers is shocking.  Nevertheless, it is

24  apparent that this is not the distinction Rowdy Mermaid is trying to draw.

25      Rowdy Mermaid argues that because it lies about kombucha's alcohol content

26  it attracts customers who would not otherwise purchase Tortilla Factory's kombucha

27  with its accurate disclosure of alcohol content.  In essence, Rowdy Mermaid argues

28

that its misrepresentations have been so thorough and pervasive that the kombucha market has segmented into two totally different groups of consumers: one set who are seeking an "alcoholic" kombucha with greater than 1.4 percent alcohol, and others who are seeking a "non-alcoholic" kombucha with less than 0.5 percent alcohol.  This is not the truth of the market, nor is it how the market is described in the Complaint.  Rather, the truth is that the health conscious consumers of kombucha will weigh the relative alcohol content of two different kombuchas when making their purchasing decision.  By presenting itself as a zero percent alcohol drink rather than a 1-1.2% alcohol drink, Rowdy Mermaid obtains a competitive advantage over Tortilla Factory's products with a similar alcohol content that is undeniable.

It would be the height of inequity if companies were able to insulate themselves from claims for false advertising by arguing that their lies created a different customer base from their competitors.  Rowdy Mermaid presents no case law to support such an argument and Tortilla Factory would urge the Court that with the danger to public health that Rowdy Mermaid's conduct poses, this is not the case in which the Court should break new legal ground.

### 2.  Tortilla Factory alleges Proximate Cause and Injury

The Supreme Court's decision in *Lexmark Int'l v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014), created a two-part test to determine whether a plaintiff can bring a cause of action under the Lanham Act: (1) plaintiff's interest must be within the zone of interests that the Act is intended to protect, and (2) plaintiff must allege that its injuries were proximately caused by defendant's deceptive practices, *id.* at 1388-90. As Tortilla Factory is a competitor not a consumer, Tortilla Factory easily passes the "zone of interest" test. Rowdy Mermaid, however, argues that Tortilla Factory's injuries were not proximately caused by its false advertising.

6

To allege proximate causation of an injury, a plaintiff must allege that defendant's "deception of consumers cause[d] them to withhold trade from the plaintiff." *Id.* at 1391. Even though proving causation and damages at trial can be difficult, the *Lexmark* Court noted that "potential difficulty in ascertaining and apportioning damages is not ... an *independent* basis for denying standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects." *Id.* at 1392. In particular "diversion of sales to a direct competitor [is] the paradigmatic direct injury from false advertising." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 215 F. Supp. 3d 51, 58 (D.D.C. 2016) (*citing Lexmark* at 1393-94); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 799 fn. 5 (5th Cir. 2011) ("a case of one competitor's directly injuring another by making false statements about his own goods and thus inducing customers to switch from a competitor presents a classic Lanham Act false-advertising claim").

Where a plaintiff directly competes with a defendant and the defendant's misrepresentation has a tendency to mislead consumers, a "misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *Nutrition Distribution LLC v. PEP Research, LLC*, 2017 WL 3972509, at *4 (S.D. Cal. Sept. 7, 2017) (*citing TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 826-27 (9th Cir. 9011)).

The *McCormick & Co. case* provides very similar factual allegations to the present. In *McCormick & Co.,* the plaintiff Watkins alleged that the defendant McCormick—its competitor in the pepper market—misrepresented to consumers the amount of pepper in its pepper containers. *Id.* at 54. McCormick presented the court with an argument identical to Defendant's, i.e. McCormick argued that "there are no facts pled to show that these unidentified and supposedly confused consumers would have purchased Watkins pepper specifically, had they not been confused, as

opposed to purchasing McCormick pepper anyway or purchasing some other brand of pepper." (RJN, Ex. A Motion to Dismiss at 9-10.)

The court rejected this argument describing McCormick's reading of the *Lexmark* decision as "irrational." *Id.* at 58. The court continued that "a deceptive act will virtually always first influence consumers, whose resulting actions affect a competitor's business interests." *Id.* "[T]here is no reason to infer that all confused consumers would have—if enlightened—chosen a different pepper alternative instead of Watkins." *Id.*

Similarly here, there is no reason to assume that all consumers that were deceived by Rowdy Mermaid's alcohol and sugar representations would have chosen a different kombucha drink.

Other post-*Lexmark* cases are instructive as well. For instance, only a few months after issuing the *Lexmark* decision the Supreme Court heard argument on a separate legal issue in *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014). *POM Wonderful* was almost identical to the present case — a beverage company sued its competitor for labeling misrepresentations in a multiple competitor market—yet the Supreme Court made no mention that its decision in *Lexmark* impacted *POM Wonderful*.

Also similar to the current case is *Nutrition Distribution LLC v. PEP Research, LLC*, 2017 WL 3972509, (S.D. Cal. Sept. 7, 2017). In *Nutrition Distribution,* the plaintiff argued that it was a competitor of defendant, that defendant mislabeled its body building supplements in a manner that was dangerous to consumers and violated applicable laws, and that such misrepresentations were harmful to the marketplace for dietary and natural nutritional supplements which included plaintiff's products. *Id.* at *4. The court determined that these allegations—which are very similar to Tortilla Factory's—were sufficient to plead a false advertising injury under the Lanham Act.

Nevertheless, Rowdy Mermaid argues that courts "often" dismiss unfair competition claims with allegations of injury similar to Tortilla Factory's. In support of this argument offers four cases:  (1) *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087 (S.D. Cal. 2017); (2) *Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.*, 2012 WL 1931519 (E.D. Mich. May 29, 2012); and (3) *Blue Star Press, LLC v. Blasko*, 2018 WL 1904835 (W.D. Tex. filed Mar. 6, 2018).[2] These cases are not factually similar and have little precedential value.

*First*, in *Bobbleheads.com* the plaintiff plead only that defendant made misrepresentations and that plaintiff suffered damages without drawing any connection between the two.  259 F. Supp. 3d at 1097.  Thus, the Court granted the motion to dismiss with leave to amend commenting that, if plaintiff had allegations in the complaint that the misrepresentations could divert sales, then the court may not have dismissed the complaint.  *Id.* Review of the docket shows that plaintiff amended the complaint to include this allegations and thus no further motion to dismiss was filed against it.  (RJN Ex. B Bobbleheads Amended Complaint, ¶ 50.) As described above, Tortilla Factory included allegations of diversion, therefore no amendment is required.

*Second*, in *Reliable Carriers*, an Eastern District of Michigan case, the defendant alleged minor misrepresentations regarding fleet size and years in operation (350 trucks versus 208 trucks, and 50 years versus 30 years).  2012 WL

---

[2] Rowdy Mermaid's remaining cases are also easily distinguishable. In *Stahl Law Firm v. Judicate W.*, 2013 WL 4873065, at *5 (N.D. Cal. Sept. 12, 2013), the plaintiff only represented that he acted as an attorney during mediations, not the other mediation service offered by defendant. Therefore he was not a direct competitor as is Tortilla Factory. In *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 2017 WL 4310671, at *4 (N.D. Ill. Sept. 28, 2017), the plaintiff alleged only a reputational injury, not an injury from diverted sales as alleged by Tortilla Factory. Finally, in *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1116 (C.D. Cal. 2004), the plaintiff and defendant had different products in different segments of the market, and plaintiff derived no revenue from its product, also different from the instant case.

OPPOSITION TO MOTION TO DISMISS

1931519, at *3.  The plaintiff had only been in operation for 3 years and had 6 trucks, therefore the court found the differences immaterial. The differences in the present case are obviously material: federal and state law regulate them precisely because they are material.

**Third**, in *Blue Star Press*, a magistrate report currently under review by the district judge in the Western District of Texas, the plaintiff failed to make any claims of direct injury.  2018 WL 1904835, at *6.  Rather, plaintiff made the unusual argument that by counterfeiting a competitor, the defendant was unfairly leveraging the competitor's reputation. The issue for plaintiff was that it failed to explain why the counterfeiting took market share away from plaintiff rather than the competitor who was counterfeited. Obviously this is very different from the present case. Tortilla Factory alleges alcohol and sugar misrepresentations, not the counterfeiting of a competitor.

### B.    Plaintiff's Claims Satisfy Rule 9(b)

Rowdy Mermaid alternatively argues that Tortilla Factory has failed to plead with particularity the fraudulent statements made pursuant to Rule 9(b).

First, it must be noted that Rowdy Mermaid improperly bifurcates its argument, presenting its challenges of claims of alcohol and sugar misrepresentations separately.  A Rule 12(b)(6) motion cannot be used to challenge just certain allegations within a claim.  Rather, such a challenge must be made by *motion to strike* under Rule 12(f).  *See Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009).  Rowdy Mermaid has made no effort to satisfy the requirements of Rule 12(f) motion.

Regardless, the Court cannot dismiss Tortilla Factory's claims without finding that the Complaint's allegations of alcohol and sugar misrepresentations are <u>both</u> insufficiently supported.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P.

10

9(b).  To satisfy the pleading requirements of Rule 9(b), a complaint must plead "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (*quoting Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

As addressed below on the face of the complaint these details are apparent. Rowdy Mermaid's labels understate its sugar content and contain misrepresentations that its kombucha products are nonalcoholic.

### 1.  The Complaint Sufficiently Alleges That Rowdy Mermaid's Sugar Content Is Understated

In asserting a plausible claim, nothing in *Twombly* or *Iqbal* precludes or alters the right of plaintiffs to plead essential facts based on "information and belief" if otherwise appropriate. *Arista Records LLC v. Doe 3* 604 F3d 110, 120 (2nd Cir. 2010); *In re Superior Air Parts, Inc.*, 486 BR 728, 740 (ND TX 2012) (fact that allegation begins with "information and belief" does not "automatically" render it legally insufficient).

The Complaint alleges that Rowdy Mermaid's kombucha products list a sugar content between 1 and 5 grams.  [Complaint, ¶ 29.]  Given Tortilla Factory's knowledge of the kombucha manufacturing process, such representations are almost assuredly false.  [Id.]  Such allegations are sufficient at the pleading stage to allege sugar representations made by Rowdy Mermaid were false.

In support of its argument, Rowdy Mermaid cites to cases presenting circumstances where the plaintiffs did not detail the actual misrepresentations or identify the facts underlying the information and belief which support certain allegations—clearly not the circumstances presented here.  *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *Jacobo v. Ross Stores, Inc.*, 2016 U.S. Dist. LEXIS 86958, at *5 (C.D. Cal. Feb. 23, 2016); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

1    If the Court is inclined to strike Tortilla Factory's sugar allegations, Tortilla

2    Factory would ask the Court for leave to amend to supplement the allegations with

3    any further evidence that may come to light.

### 2. The Complaint Sufficiently Alleges Testing That Supports Its Alcohol Allegations

6    Next, Rowdy Mermaid argues that allegations of alcohol misrepresentations

7    cannot satisfy Rule 9(b) unless Tortilla Factory alleges results from all testing

8    methods, without even identifying a single test it believes Tortilla Factory should

9    have performed.  Rowdy Mermaid asserts that "Tortilla Factory must allege specific

10    facts showing Rowdy Mermaid's products were found to contain more than 0.5%

11    alcohol by volume under each of these valid testing methodologies." [MTD at

12    11:25-27.]  Yet, Rowdy Mermaid acknowledges that there are no "approved" tests.

13    [MTD at 11:18-23 ("[P]roducers may use any method that has been formally

14    validated.")[3]]

15    Rowdy Mermaid is almost certainly aware that the Kombucha Brewers

16    International ("KBI"), the leading kombucha industry association, of which it is a

17    member, recommends Headspace Gas Chromatography combined with Mass

18    Spectrometry for alcohol testing,[4] the exact test used by Tortilla Factory.

19    (Complaint, ¶ 26.)  Despite this and knowing that the TTB does not have a preferred

20    or "approved" test, Rowdy Mermaid still argues to this Court that Tortilla Factory's

21    claims are insufficiently specific because it has not utilized all unidentified testing

---

[3] Tortilla Factory presumes Rowdy Mermaid's argument refers to the UCL cause of action based in part on violations of TTB labeling and distribution requirements though Rowdy Mermaid does not make this clear. Obviously this argument does not address the other public misrepresentations noted in the Complaint.

[4] *See* https://kombuchabrewers.org/resources/approved-alcohol-testing-methods/ (footnote continued)

methods available to determine alcohol in kombucha.  This argument simply fails on its face.

The legal support Rowdy Mermaid provides in support of its argument is equally confused.  The primary case provided by Rowdy Mermaid is *Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478 (D.N.J. 2013).[5]  In *Burke,* implementing regulations promulgated by the FDA allowed a "safe harbor provision" such that calorie labeling would be considered accurate if any one of five methods showed only a 20% deviation from listed calories.  *Id.* at 483.  The *Burke* court determined that the FDA regulations preempted any state law claim and that plaintiff needed to plead that defendant was not entitled to the safe harbor provision, i.e. that not one of the five methods showed the requisite accuracy.  There was also a federal regulation that identified the tests to be used.

In the present case, there is no regulation or statute that provides a similar safe harbor provision for alcohol labeling or that lists the specific tests to be used or that there is even a comprehensive statutory scheme that would implicate preemption. *Cf. English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990) (the Supreme Court explained the three ways in which federal law will preempt a state law: (1) Congress can explicitly do so, (2) Congress can impliedly do so by creating through a pervasive scheme of federal regulation with no room for the states to supplement; and (3) state law is pre-empted to the extent that it actually conflicts with federal law).  The TTB statements on its website in response to frequently asked questions cited by Rowdy Mermaid does not qualify in form or substance.

---

[5] The other two cases concern motions for a preliminary injunction with significantly greater evidentiary requirements than are relevant for a 12(b)(6) motion.  *See Pamlab LLC v. Seton Pharm., LLC*, 2010 U.S. Dist. LEXIS 128819 (S.D.N.Y. Dec. 6, 2010); *Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 588 F. Supp. 1082, 1085 (S.D.N.Y.), *aff'd*, 747 F.2d 114 (2d Cir. 1984).

13

In any event, Rowdy Mermaid's failure to label its kombucha product with required TTB warnings is only one of the misrepresentations it makes. For example, also noted in the Complaint are Rowdy Mermaid's misrepresentations to the press. These misrepresentations would be separate and apart from TTB regulations.  In other words, the Court could determine that Rowdy Mermaid misrepresented its alcohol content was below 0.5% without reference to any TTB regulation or testing methodology.

### C.   The Doctrine of Primary Jurisdiction Does Not Apply and Therefore a Stay is Unnecessary

Rowdy Mermaid offers no credible argument or authority that the doctrine of primary jurisdiction applies.  "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir.2008). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry, rather than by the judicial branch." *Id.* "[T]he court either stays proceedings or dismisses the case without prejudice, so that the parties may seek an administrative ruling." *Id.* at 1115.

The Ninth Circuit considers the following factors in determining whether to invoke the primary jurisdiction doctrine: "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Id. (alteration in original).

14

1   Application of the doctrine is not appropriate here. First and foremost, there is

2   no "issue" that needs to be resolved by the TTB.  The TTB does not proscribe any

3   specific testing methodology for alcohol in kombucha and as cited to by Rowdy

4   Mermaid, the TTB's FAQ pages provides that "producers may use any method that

5   has been formally validated."  There is no evidence or argument that Congress has

6   asked the TTB to pick a testing methodology or that the TTB on its own initiative

7   plans to do so. So Rowdy Mermaid seeks an indefinite stay based on its opinion that

8   the TTB should determine an appropriate testing method.  And, ironically, the KBI

9   is lobbying to make headspace gas chromatography the preferred method, the very

10  test used by Tortilla Factory.  Additionally, testing alcohol levels is not uniquely in

11  the province of the TTB.  Headspace gas chromatography is actually the method

12  used by law enforcement to test blood alcohol levels.  Accordingly there is no

13  technical issue here that requires the TTB to first resolve.  The TTB has already

14  resolved it and allowed kombucha brewers to use the method espoused by the KBI

15  and used by Tortilla Factory.

16  Beyond this, Rowdy Mermaid's authority is inapposite.  *Cruz v. Anheuser-*

17  *Busch, LLC*, 2015 WL 3561536 (C.D. Cal. June 3, 2015), does not address primary

18  jurisdiction or provide any support for Rowdy Mermaid's argument.  In *Cruz* the

19  plaintiff argued that the ingredients portion of defendant's alcoholic beverage label

20  was misleading.  The Cruz court determined that because defendant had received

21  TTB approval stating that the label satisfied all TTB regulations through the process

22  prescribed in TTB it was entitled to a "safe harbor."  In the present instance Rowdy

23  Mermaid argued in essence that because the TTB has not adopted any specific

24  testing methodology for determining alcohol content, it should be entitled to similar

25  safe harbor forestalling any litigation regarding any representations of alcohol

26  content it puts on its label.  This cannot be the case.

27

28

Rowdy Mermaid also cites to *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918 (C.D. Cal. 1996).  In *Summit* there was an issue regarding whether the importation of previously owned lasers by defendant was a breach of an FDA regulation.  *Id.* at 934.  Correspondence provided to the court showed that the FDA had not yet determined whether defendant's actions were in breach of its regulations or whether it intended to take action.  Therefore, the Court declined to preempt any agency decision with its own. There is no such concern here.  There is no pending decision from the TTB regarding enforcement of its rules against Rowdy Mermaid that Tortilla Factory is aware of.   Rather, the *Summit* court's alternate discussion of other case law appears more instructive.  The *Summit* court noted that in actions regarding "bioequivalence" and "pure" juice claims the courts properly allowed them to proceed because scientific testing (in regards to bioequivalence) or commercial definition (in regards to pure juice claims) did not require regulatory interpretation.  *Id.*  Similarly, here there are scientific methods permitted by the TTB that allow a determination of alcohol content regardless of TTB regulations.  Furthermore, misrepresentations that Rowdy Mermaid products contain only "trace amounts" of alcohol implicate the commercial definition of "trace amounts," not any TTB regulation.  Therefore, there is no reason to stay this proceeding pending any ruling by the TTB.

More instructive is *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009).  In *Lockwood* the court commented that "various parties have repeatedly asked the FDA to adopt formal rulemaking to define the word natural and the FDA has declined to do so because it is not a priority and the FDA has limited resources."  At 1034-35.  "[T]his is not a technical area in which the FDA has greater technical expertise than the courts—every day courts decide whether conduct is misleading."  *Id.*  Finally, "plaintiffs' claims are based on state law and, as the Court's analysis of implied preemption suggests, even if the FDA were to

OPPOSITION TO MOTION TO DISMISS

formally define 'natural,' federal law would not dispose of plaintiffs' state law claims." *Id*.

The *Lockwood* reasoning undeniably applies here.  The fact that the KBI has asked the TTB to adopt a different testing methodology is no reason to stay the action, the TTB simply has other priorities.  This is not a technical area, state law enforcement and other industries and regulatory groups regularly test alcohol content.  Finally, Tortilla Factory's claims lie not only for the failure of Rowdy Mermaid to comply with TTB regulations, but also its affirmative representations that describe its product as having "trace" amounts of alcohol (or as otherwise nonalcoholic).  These claims stand separate and apart from any TTB regulation.

## V.    CONCLUSION

For the foregoing reasons, Tortilla Factory asks that the Rowdy Mermaid's motion to dismiss be denied in its entirety.  To the extent the Court is inclined to grant the motion to dismiss in whole or in part, Tortilla Factory respectfully requests leave to amend.

DATED: July 30, 2018          LEVATOLAW, LLP


                              By: /s/ Stephen D. Weisskopf
                                 Stephen D. Weisskopf
                                 Attorneys for Plaintiff TORTILLA FACTORY,
                                 LLC

17